SHORR, J.
*422 Youth appeals a judgment and order of the juvenile court denying his motion to set aside a 1995 juvenile delinquency adjudication for conduct that, if committed by an adult, would constitute sexual abuse in the first degree, ORS 163.427, and sodomy in the second degree, ORS 163.395. Youth argued in *483 his motion that the adjudication was invalid because he had not knowingly or voluntarily waived his right to counsel or entered a valid plea due to the juvenile court's alleged failure to inform him of a potential statutory defense and a collateral consequence-mandatory sex-offender registration-of his plea. The court denied youth's motion, determining that youth had failed to meet his burden of proving by a preponderance of the evidence that the adjudication should be set aside. On appeal, youth reiterates the arguments that he made to the juvenile court, namely that his "federal constitutional rights were violated by lack of counsel in the underlying proceeding, which led to a plea that was not voluntary, knowing, and intelligent."[1] For the reasons explained below, we affirm the court's denial of youth's motion.
The juvenile court has the authority to "set aside any order made by it," ORS 419C.610(1), for reasons including a "substantial denial in the proceedings resulting in the person's adjudication * * * of the person's rights under the United States Constitution or the Oregon Constitution, or both," if "the denial rendered the adjudication void," ORS 419C.615(1)(a). A youth who files a motion to set aside a juvenile adjudication that the youth argues resulted from an invalid, uncounseled plea has the burden to prove by a preponderance of the evidence that the plea was invalid. See ORS 419C.615(2)(b) (providing that the "petitioner has the *423 burden of proving by a preponderance of the evidence the facts alleged in the petition").
We review the juvenile court's construction of a constitutional provision for legal error. State v. Rangel , 328 Or. 294, 298, 977 P.2d 379 (1999). We are bound by the court's factual findings that are supported by evidence in the record, including a finding that a party's evidence is not "sufficiently persuasive." State v. Johnson , 335 Or. 511, 523, 73 P.3d 282 (2003).
We provide the following facts as context for the juvenile court's denial of youth's motion. Youth was 14 at the time of the charged incident and 16 at the time of the 1995 juvenile adjudication. The victim was 12 years old at the time of the charged incident. Before trial in Yamhill County Circuit Court, youth waived his right to counsel and subsequently admitted to the charges that brought him within the jurisdiction of the juvenile court. Youth signed a document captioned "Petition Admitting Allegations That Child is Within the Jurisdiction of the Court. Waiver of Right to an Attorney." Paragraph 3 of the petition provided that youth had the "right to have an attorney." Paragraph 4 provided that youth was "entitled to an attorney at all times either in Court or when questioned about this matter" and that youth "may hire an attorney" or have one appointed by the court if youth was "without sufficient funds." Following paragraphs 3 and 4, the petition presented youth with a check-the-box option to "proceed without an attorney representing me at this time" or to be "represented by an attorney," and he checked the box next to "proceed without an attorney representing me at this time."
Paragraph 6 of the petition claimed that the "maximum penalty" that youth could face by admitting to the charges was up to 20 years of confinement and a fine of up to $400,000. Paragraph 12 provided that youth offered his admission "freely and voluntarily and of my own accord and with full understanding of these matters." Significant to this appeal, the plea petition did not contain a notice that youth would have to register as a sex offender if he admitted to the charges against him and did not notify youth of any possible defenses that he could raise instead of admitting to the *424 charges against him. The record does not contain any other evidence of whether the juvenile court, in a colloquy with youth or through other means, informed youth of the collateral consequences of his plea, including mandatory sex-offender *484 registration, or advised youth of the specific risks of entering a plea without first consulting with an attorney.[2]
Youth's plea in 1995 admitting to the allegations contained in the sodomy and sexual abuse charges resulted in a mandatory lifetime obligation to register as a sex offender. ORS 181.594 - 181.596. In 2014, youth was charged with failure to report as a sex offender in Multnomah County. See ORS 163A.040. In response, youth filed a motion in that court to set aside his 1995 juvenile adjudication. He submitted an affidavit in support of his motion in which he averred that, during the 1995 proceedings, he "was not informed" that he had an age-based defense under ORS 163.345[3] or that he "would be subject to lifetime sex offender registration" as a result of his plea. Although the basis for its decision is absent from the record, the Multnomah County court entered a one-line order that "granted" defendant's "pre-trial motion re. challenge to prior conviction."[4] The court subsequently entered a judgment dismissing the failure-to-register charge against youth. The judgment provides that "all counts are dismissed on motion of the state as it is unable to proceed." The basis for the state's motion to dismiss and the court's decision to grant it is not apparent from the record, which does not contain any transcripts or other *425 documents from the Multnomah County proceeding apart from the aforementioned affidavit, order, and judgment.
Following the dismissal of the criminal charge in Multnomah County, youth filed a motion in Yamhill County juvenile court to set aside his 1995 adjudication. Youth argued that his waiver of counsel was invalid and his plea was not voluntary because the juvenile court in 1995 had not warned him that, by pleading and admitting to the allegations against him, he was waiving a potentially viable defense and that he would be required to register as a sex offender. As to the latter contention, youth's principal argument was that his case is analogous to Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), in which the United States Supreme Court determined that criminal defendants have a constitutional right to be informed whether deportation is a possible consequence of a guilty plea.
At the hearing on the motion, the juvenile court first noted that the record from 1995 was sparse-consisting of only "two pieces of paper," including the plea agreement in which youth waived his right to an attorney and admitted to the charges against him-and contained no audio recording, transcript, or other evidence of the court's interactions with youth prior to youth entering his plea. The court went on to reject youth's argument that Padilla required the juvenile court to warn him of the mandatory sex-offender registration requirement before accepting his uncounseled plea, explaining that "the obligation that may have been present that required [youth] to register was not the type of event that would require a dialogue to accept his admission." Ultimately, the court determined at the hearing that "the record is adequate to say that [youth] was advised of the right to counsel and made a knowing waiver of that right when he entered his admissions." The court subsequently entered an order denying youth's motion because "youth has not met his burden to prove by a preponderance of the evidence that his juvenile adjudication should be set aside."
*485 Before turning to our review of the juvenile court's denial of youth's motion, we provide a brief summary of the legal parameters of the constitutional right to an attorney *426 when a youth enters a plea in a juvenile proceeding. A youth has a right to counsel in a juvenile proceeding as a matter of fundamental fairness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In re Gault , 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).[5] In an adult criminal prosecution, the defendant has a right to counsel under the Sixth Amendment to the United States Constitution.[6] Of course, a juvenile proceeding is not a criminal prosecution. See State ex rel. Juv. Dept. v. Reynolds , 317 Or. 560, 575, 857 P.2d 842 (1993) (holding that a juvenile proceeding is not a criminal prosecution under Article I, section 11, of the Oregon Constitution ). However, some protections provided to criminal defendants under the United States Constitution may also extend to youths in juvenile proceedings. Id. at 574, 857 P.2d 842. And, as noted, the United States Supreme Court has held that youths have a right to counsel under the Due Process Clause. In re Gault , 387 U.S. at 41, 87 S.Ct. 1428.
As with other constitutional rights, a youth may also waive the right to counsel if the youth has made an "intentional relinquishment or abandonment of a fully known right." Id. at 42, 87 S.Ct. 1428 ; cf. Iowa v. Tovar , 541 U.S. 77, 87-88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (holding, in the context of a criminal case, that an adult defendant may waive the right to counsel under the Sixth Amendment if the waiver is "knowing, voluntary, and intelligent"). That is, a youth must intentionally relinquish or abandon a fully known right.
When a criminal defendant enters an uncounseled plea, "[t]he constitutional requirement [under the Sixth Amendment] is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." Tovar , 541 U.S. at 81, 124 S.Ct. 1379. The court need not "advise the defendant that waiving the assistance of counsel in deciding *427 whether to plead guilty entails the risk that a viable defense will be overlooked," nor must the court "admonish the defendant that by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty." Id. (internal citations omitted).
On appeal, youth first reiterates his argument that his waiver of counsel was invalid, and his subsequent plea involuntary, because he was not informed of a potential defense that he could have raised at trial. Youth cites ORS 163.345(1), which provides, in relevant part, that, in a prosecution for sexual abuse in the first degree or sodomy in the second degree in which "the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specific age, it is a defense that the actor was less than three years older than the victim at the time of the alleged offense." At the time of the conduct on which his adjudication was based, youth was 14 and the victim was 12-a difference of less than three years. On that basis, youth argues that he had a potential defense of which he was unaware when he admitted to the charges against him. Youth argues that the juvenile court's failure to inform him of that potential defense means that he did not "substantially appreciate the risks of self-representation" before he admitted to the charges pleaded against him.
We reject youth's argument because, even assuming that the same standards that would apply to permit a criminal defendant to waive his right to counsel and plead guilty under the Sixth Amendment apply to youth in this juvenile proceeding, the juvenile court was not required to inform youth of potential statutory defenses to obtain a valid waiver of *486 counsel and voluntary plea.[7] Here, the plea agreement that *428 youth signed informed youth of the precise charges against him, his right to an attorney (including the right to have an attorney provided to him if he could not afford one), and the maximum possible punishment that he faced by admitting to the charges. Cf. Tovar , 541 U.S. at 81, 124 S.Ct. 1379 (describing those requirements). As noted above, youth, who bears the burden of proof in this collateral attack on the adjudication resulting from his plea, did not provide a transcript of any colloquy between the court and youth that may shed further light on the circumstances preceding youth's written waiver or the depth of his understanding of either the charges against him or the terms of the written waiver. Regardless, even under the Sixth Amendment, a court would not be obligated to "advise [youth] that waiving the assistance of counsel in deciding whether to plead guilty entails the risk that a viable defense will be overlooked" before it could accept youth's plea. Id. ; see also Wayne R. LaFave, 3 Criminal Procedure § 11.3(b) (4th ed. 2016) (explaining that "judicial advice as to defenses and mitigating circumstances" is not a prerequisite to a valid uncounseled guilty plea). Accordingly, the juvenile court did not err by denying youth's motion to set aside the 1995 adjudication despite youth's averment that he had not been informed of a possible statutory defense to the charges against him.
Youth next argues that the juvenile court's failure to inform him that he would be required to register as a sex offender rendered his waiver of counsel and subsequent plea invalid. Mandatory registration as a sex offender is a "collateral consequence" of a conviction for various sexual crimes in Oregon. Rodriguez-Moreno v. State of Oregon , 208 Or. App. 659, 664, 145 P.3d 256 (2006), rev. den. , 343 Or. 159, 164 P.3d 1160 (2007). In Rodriguez-Moreno , we held that it was not inadequate or ineffective assistance of counsel under Article I, section 11, or under the Sixth Amendment for criminal counsel to fail to inform a client of the collateral consequence of mandatory *429 sex-offender registration prior to a plea. Id. Registration is "not a form of increased punishment." State v. MacNab , 334 Or. 469, 481, 51 P.3d 1249 (2002). As the Supreme Court explained in Tovar , a defendant must have some apprehension only of the "range of allowable punishments" before the trial court can accept an uncounseled plea. 541 U.S. at 81, 124 S.Ct. 1379.
Notwithstanding that general rule, youth argues that the Supreme Court's decision in Padilla , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284, required the juvenile court to warn youth that his plea would result in mandatory sex offender registration. Youth maintains that, without that warning, he could not knowingly and intelligently waive his right to counsel and enter a valid plea. In Padilla , the Court determined that the Sixth Amendment requires counsel to inform a client whether his or her plea carries a risk of deportation. The Court explained that, although deportation "is not, in a strict sense, a criminal sanction," it nevertheless was a "particularly severe" and "unique" "penalty" for a host of crimes committed by noncitizens, including "virtually every drug offense." 559 U.S. at 365, 359 n. 1, 130 S.Ct. 1473. After tracing the history of deportation as a consequence of criminal convictions, the Court explained that "deportation is * * * intimately related to the criminal process.
*487 Our law has enmeshed criminal convictions and the penalty of deportation for nearly a century. Thus, [it is] most difficult to divorce the penalty from the conviction in the deportation process." Id. at 365-66, 130 S.Ct. 1473. The Court then described how deportation is "uniquely difficult to classify as either a direct or a collateral consequence," and, therefore, how the distinction between direct and collateral consequences is "ill suited" to evaluating inadequate assistance claims concerning the "specific risk of deportation." Id. at 366, 130 S.Ct. 1473. Finally, the Court concluded that "longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand" that "counsel must inform her client whether his plea carries a risk of deportation." Id. at 374, 130 S.Ct. 1473.
Youth maintains that Padilla extends to cases in which a plea will require sex-offender registration. Therefore, youth contends, the juvenile court was required to warn him *430 that his uncounseled plea would result in mandatory sex-offender registration before he could have knowingly waived his rights to counsel and entered a plea. However, even assuming that Padilla would require an attorney or a juvenile court today to advise a youth that a plea to a particular charge may require registration as a sex offender, Padilla (a 2010 decision) cannot be applied retroactively under the circumstances of this case and thus would not have required an attorney, or a court, to advise youth in 1995 that his plea could result in mandatory registration as a sex offender.
The United States Supreme Court considered the retroactive application of Padilla in Chaidez v. United States , 568 U.S. 342, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013). In Chaidez , the petitioner was a lawful permanent resident whose guilty plea subjected her to mandatory deportation. Id. at 345, 133 S.Ct. 1103. After the petitioner's conviction was final, but before the Supreme Court decided Padilla , she filed a petition for a writ of coram nobis in federal court, claiming that her former attorney's failure to advise her of the immigration consequence of her plea constituted ineffective assistance of counsel under the Sixth Amendment. Id. The Court ultimately granted certiorari in Chaidez to resolve whether Padilla applied retroactively such that, before Padilla , counsel had a duty under the Sixth Amendment to advise defendants of the risk of deportation from a guilty plea. Id. at 344, 133 S.Ct. 1103. Applying the principles for federal retroactivity announced in Teague v. Lane , 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Court held that Padilla announced a new rule of criminal procedure that did not apply retroactively such that "defendants whose convictions became final prior to Padilla therefore cannot benefit from its holding." Chaidez , 568 U.S. at 358, 133 S.Ct. 1103.
Even more significant to this case, we had the opportunity to consider the retroactive application of Padilla in the context of a post-conviction case in which the petitioner claimed that he was entitled to relief because his counsel was ineffective and inadequate under the Oregon and United States constitutions for failing to inform him of "specific immigration-related consequences that could result *431 from pleading guilty." Saldana-Ramirez v. State of Oregon , 255 Or. App. 602, 603, 298 P.3d 59, rev. den. , 354 Or. 148, 311 P.3d 525 (2013). We reviewed Padilla and Chaidez and concluded that
"[p]etitioner's Padilla -based post-conviction claim arises in a procedural posture functionally indistinguishable from that in Chaidez . Petitioner's conviction became final before Padilla issued. Thus, under federal retroactivity principles as elucidated in Chaidez , Padilla does not apply to petitioner's collateral challenge. Federal retroactivity principles govern whether a new federal rule applies retroactively in Oregon court."
Id. at 608, 298 P.3d 59 (brackets and internal quotation marks omitted). Youth's plea and juvenile adjudication became final before Padilla issued. To the extent that youth argues that, in view of Padilla , the juvenile court was compelled to grant his motion to vacate the prior adjudication on the ground that, at the time of the plea, the juvenile court did not advise him that his uncounseled plea would result in mandatory sex-offender registration, *488 that argument fails because, under Saldana-Ramirez , Padilla does not apply retroactively and, therefore, youth is not entitled to its application as a matter of right.[8]
In sum, we conclude that the juvenile court did not err when it denied youth's motion to set aside his juvenile adjudication based on its conclusion that youth had failed to prove by a preponderance of the evidence that his waiver of counsel and plea were invalid. The juvenile court at the time of the adjudication was not obligated to warn youth that his *432 uncounseled plea would result in mandatory sex-offender registration or that youth had a possible statutory defense that he would waive by admitting to the allegations against him.
Affirmed.

Youth also argues that the juvenile court was required to grant his motion based on issue preclusion. Youth's argument is based on a 2014 order from the Multnomah County Circuit Court, discussed in greater detail below, granting his "motion re. challenge to prior conviction." Youth did not preserve that argument, and we decline to exercise our discretion to address it as plain error. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief * * * provided that the appellate court may, in its discretion, consider a plain error.").

During the proceedings that gave rise to this appeal, youth moved to delay the hearing on his motion to set aside his plea so that he could have more time to obtain the transcript, audio, or other evidence of his original plea hearing. The juvenile court granted that motion, but no transcript or audio was ultimately presented.

ORS 163.345(1) provides:
"In any prosecution under ORS 163.355, 163.365, 163.385, 163.395, 163.415, 163.425, 163.427 or 163.435 in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was less than three years older than the victim at the time of the alleged offense."

Youth raises an unpreserved argument that the Multnomah County Circuit Court order rendered his 1995 juvenile adjudication "void" and that the order should have been given preclusive effect in the Yamhill County Circuit Court proceeding to set aside his 1995 adjudication. We do not reach that issue, see 295 Or. App. at 422 n. 1, 434 P.3d at 483 n. 1, and also do not decide if either the Multnomah County Circuit Court order or judgment set aside youth's juvenile adjudication.

On appeal, youth does not allege a violation of his rights under Article I, section 11, of the Oregon Constitution, which provides a right to counsel "in all criminal proceedings." Accordingly, we limit our analysis to the applicable federal constitutional standard.

The Sixth Amendment provides, in relevant part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense."

We also note that youth likely overstated to the juvenile court the applicability of the age-based defense provided by ORS 163.345(1). Youth argued that the defense was "irrefutable." But ORS 163.345(1) applies only when "the alleged lack of consent is based solely on incapacity due to the victim's age." State ex rel. Juv. Dept. v. Kitt , 129 Or. App. 591, 594, 879 P.2d 1348 (1994). It is "inapposite when there is an actual lack of consent." Id. (emphasis in original). Here, the state presented evidence that the victim was asleep when youth initiated the charged contact, which the state argued shows that the victim's lack of consent was due both to her age and to the fact that youth had used forcible compulsion to engage in sexual activity with her. Youth acknowledges in this appeal that the applicability of the defense under ORS 163.345(1) was not "irrefutable" and that it was merely a "possibility that would have been explored by a defense attorney." Even if we assume without deciding that a youth has a due process right to warnings about the risk of waiving an absolute defense before entering a valid plea admitting to the charges against him, the juvenile court was not faced with that situation when it determined that youth, in this case, had failed to prove that his 1995 adjudication should be set aside.

We recognize that Saldana-Ramirez is a post-conviction case that followed a criminal conviction. In contrast, youth's motion to set aside his prior juvenile adjudication was filed under ORS 419C.610 and ORS 419C.615(1)(a). We do not mean to suggest that those statutes necessarily involve the same standards as statutes that provide an opportunity for post-conviction relief under ORS 138.510 to 138.680. See Smith v. Jester , 234 Or. App. 629, 632-33, 228 P.3d 1232 (2010) (addressing difference between motions under ORS 419C.610 and petitions for post-conviction relief); see also State ex rel. Juv. Dept. v. Tyree , 177 Or. App. 187, 191-93, 33 P.3d 729 (2001) (discussing scope of juvenile court's authority under ORS 419C.610 ). In particular, we do not address the question of whether a juvenile court would have the discretion under ORS 419C.610 to vacate a juvenile adjudication that became final before Padilla was decided under the principles announced in Padilla , notwithstanding the fact that it does not apply retroactively of its own force.